Goodstein *v.* Board of Mississippi Levee Com'rs.*

(Division B. April 15, 1929.)

[121 So. 856. No. 27854.]

784

*Valentine & Valentine,* for appellant.

*Walter Sillers, Jr., Louis C. Hallam* and *J. C. Roberts,* for appellee.

GRIFFITH, J. Under section 5, chapter 128, Laws of 1906, it is provided that: "It shall be unlawful for any one to remove or cause to be removed from the Mississippi Levee District any cotton grown therein without first paying the levee tax thereon, and any one so removing such cotton without paying such tax and without the consent of the levee board of said district, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined; . . . and in addition the board of Mississippi levee commissioners shall be entitled to recover from the person so removing such cotton a tax of ten dollars ($10) for each bale . . . on all cotton so removed. . . ."

The regular levee tax fixed and assessed for the years 1926 and 1927 was one-fourth of one cent per lint cotton pound. Appellant (1) on July 2 and 6, 1927, shipped three bales of cotton on which the regular tax has never been paid; (2) on May 18, 1927, he shipped two bales on which the regular tax was paid direct to appellee's cotton tax collector on July 18, 1927; (3) on March 1, 1927, he shipped eight bales on which the regular tax was paid on the day of shipment; and (4) on March 31, 1927, he shipped ten bales on which the regular tax was paid on April 9, 1927. The last two payments were made to the Bolivar County Bank, which later remitted same to appellee's cotton tax collector.

The principal argument at the bar is addressed to the question whether the quoted statute imposes a penalty or simply a tax. In the civil sense, a statutory penalty is a pecuniary punition imposed by statute for doing some act which is prohibited, or for omitting to do some act which is required to be done. In the popular mind, the idea of a penalty is always present when a certain regular tax is laid, and is coupled with a requirement that it shall be paid on or before a definite time, and a much larger or greatly increased tax is exacted in

default of payment on or before the said certain time, even if the default be but for a day. There is a default, and a greatly increased exaction follows as a result—there is a penalty for the default. And this popular idea is accurate enough in point of law, so far as concerns the case and the statute here being considered. It is true the statute denominates the greatly increased payment, when paid after removal, as a tax; but the determination of the question whether a statute imposes a penalty is not controlled by the name or designation which the legislature has given to it, nor by the fact that the legislative act may describe it as a further sum or an additional tax, or simply a tax, if it is yet greatly in excess of the amount of the regular tax and is imposed by reason of the default of the tax debtor. The intrinsic nature of the exaction will control, and it will be regarded as a penalty when by its very nature it is a penalty. 21 R. C. L., p. 210; *Helwig* v. *U. S.*, 188 U. S. 605, 23 S. Ct. 427, 47 L. Ed. 614.

It will be observed that the statute, strictly construed, imposes the penalty, not for removing the cotton upon which the regular tax has not first been paid, but for doing so without the consent of the levee board of the district. These words imply that the levee board may consent, else the words are surplusage. It may be assumed that it was meant thereby to allow the revenue administration of the board to conform to every-day practical customs and conveniences; as, for instance, where a shipper obtains his bill of lading, and, attaching thereto a draft on the consignee, deposits the same in bank to his credit, less the cotton tax which the bank is directed to pay to the cotton tax collector out of the proceeds—particularly so in view of the fact that, when such tax collections are deposited in bank, they become public trust funds, entitled to priority of payment. There is an agreed statement of facts in the record, and it is the contention of appellant that this agreed statement

shows such a consent by general course of conduct on the part of the levee board as to relieve him of the said penalty, except as to the three bales mentioned in item one.

It it difficult to construe the agreed statement of facts. It is made up of several broad statements of general practice and custom in respect to the material matters in issue, which statements are followed by averments of exception and qualification in such a manner that it is not clear just what the parties have agreed upon as to the real facts. It is, however, a fair construction of the agreement that the board did, throughout this period, and for a period of several years theretofore, receive remittances of the cotton tax made to and through the Bolivar County Bank, as well as other local banks, and that this method of settlement was a practice sufficiently prevalent as to make it, as we think, unjust to shippers relying thereon now to apply the penalty; it being admitted by the agreement that appellant did rely thereon.

It is contended by appellee that these practices were not authorized by the board by an order spread on its minutes, and that, moreover, the members of the board did not have direct, personal knowledge of what had been going on in respect to the practice relied on by appellant. It may be conceded that all matters of general and vital policy ought to go on the minutes of the board. Nevertheless, it could hardly be fairly contended with respect to statutory penalties that a board, failing to make an entry on its minutes, could permit a general administrative custom to prevail as if there had been a formal recorded recognition of it, and, when the custom had been acted upon, then afterwards go out and collect large penalties upon the basis of its own default in failing to complete its minutes so as to show, in words, on paper, what it had been doing by acts open to the eyes of all who observed. And, as to the point that the members of the board had no direct, personal knowledge, it

is sufficient to say that there were facts sufficient to put them on notice.

We think, therefore, that the decree is erroneous in so far as it affixes the penalty upon the last two items of eighteen bales paid through the bank, and to that extent it is reversed. Regarding the two bales mentioned in item 2, we do not find sufficient of tangible definiteness in the agreed statement of facts to bring these within the defense.

*Affirmed in part, and reversed in part.*

